IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRESIDENT AND FELLOWS
OF HARVARD COLLEGE,

      Plaintiff,

v.                                                                    No. CIV 15-00472-RB/KK

STEVE ELMORE, STEVE ELMORE
PHOTOGRAPHY, INC., d/b/a STEVE ELMORE
INDIAN ART, and d/b/a SPIRIT BIRD PRESS,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Amended Complaint (Doc. 71); Plaintiff's Motion for Extension of Time to Respond to Defendant Elmore's Motion for Partial Summary Judgment (Doc. 102); Plaintiff's Motion for Leave to Amend Complaint (Doc. 118); Defendant's Motion for Partial Summary Judgment (Doc. 92); and Plaintiff's Cross-Motion for Summary Judgment That Elmore is Liable for Copyright Infringement (Doc. 109).  Plaintiff President and Fellows of Harvard College (Harvard) sued Steve Elmore, alleging copyright infringement, breach of contract, and false designation of origin (Doc. 1) and later amended its complaint to include Steve Elmore Photography, Inc., d/b/a Steve Elmore Indian Art, and d/b/a Spirit Bird Press (collectively with Steve Elmore, "Mr. Elmore") (Doc. 17 at 44–65).  Harvard requested a preliminary injunction to stop Mr. Elmore from distributing his book and using copyrighted photographs (Doc. 5), and the Court temporarily enjoined distribution of Mr. Elmore's book (Doc. 75).  Mr. Elmore and Harvard filed

cross motions for partial summary judgment on the copyright infringement claims.  (Docs. 92; 109.)  Harvard then moved to amend its complaint a second time to add a second copyright infringement claim.  (Doc. 118 ¶ 53 at 12; *see also* Docs. 92 at 14; 118 at 1).

Having reviewed the parties' submissions and arguments, the Court **DENIES** Defendant's Motion to Dismiss Amended Complaint (Doc. 71); **GRANTS** Plaintiff's Motion for Extension of Time to Respond to Defendant Elmore's Motion for Partial Summary Judgment (Doc. 102); **DENIES** Plaintiff's Motion for Leave to Amend Complaint (Doc. 118), **GRANTS** Defendant's Motion for Partial Summary Judgment (Doc. 92); and **DENIES** Plaintiff's Cross-Motion for Partial Summary Judgment that Elmore is Liable for Copyright Infringement (Doc. 109).

## I.    BACKGROUND

Mr. Elmore and Harvard contracted to publish a book, provisionally titled *In Search of Nampeyo: the Apprenticeship of a Great Hopi Artist*.  (Doc. 92-1 at 1.)  In theory, it was a good deal for both parties.  Harvard stood to benefit because the book would discuss pottery in Harvard's Keam collection, which is held in Harvard's Peabody Museum, and potentially attribute much of the artifacts to a renowned Hopi artist, Nampeyo.  (*See* Docs. 92 ¶ 1; 109 ¶ 1.)  Mr. Elmore also stood to benefit, because the book would build his credibility as an author and dealer of Hopi pottery.  (*See* Docs. 92-1; 13-1 ¶ 9.)  The deal, however, did not go according to plan.

Three and a half years after the agreement, Harvard declined to publish Mr. Elmore's book and returned rights to the manuscript to Mr. Elmore.  (Docs. 92-1; 92-4.)  Undeterred, Mr. Elmore decided to self-publish his manuscript, now entitled *In Search of Nampeyo: The Early Years, 1875–1892*, through Spirit Bird Press, a subsidiary of Steve Elmore Indian Art.  (Docs.

13-1 ¶¶ 21–22; 109 ¶ 7.)   Mr. Elmore used, among other illustrations, one photograph of a "Tusayan or Kayenta black on white jar" from the Keam collection (Tusayan Jar) (Pl.'s Supp. Ex. 1 at 182 fig.8.6) and over 40 images based on photographs in *Historic Hopi Ceramics*, a book published by Harvard's Peabody Museum Press (Doc. 109-1; *see also* Pl.'s Prelim. Inj. Ex. 22).   Mr. Elmore never asked to publish these images.  (Doc. 88 at 89:14–16.)

The photograph of the Tusayan jar was a "conservation image" taken in 1980 "as part of a condition assessment" of the collection.  (Doc. 88 at 47:1–2, 47:23–25.)  Viewing the facts in a light most favorable to Harvard, Peabody Museum Photographer Hillel Burger took the photograph.   (Doc. 109-4 ¶ 15.)   According to Harvard, the image was not publicly available until 2002 when Harvard posted the photograph as part of Harvard's online collection.  (Doc. 88 at 47:22–48:11.)  Mr. Elmore disagrees; he says he purchased a postcard with the photograph at a flea market "in the late '90's."  (Doc. 109-2 at 2.)  Either way, the photographs are almost identical, with only the slightest difference in shade.  (*Compare* Pl.'s Supp. Ex. 1 *with* Doc. 109-5.)  The image is a close-up side view of the Tusayan jar, angled slightly above eye level to show the entire rim of the jar, which shows two chips in the rim, one in the foreground and one on the back side of the rim.  (*See* Pl.'s Supp. Ex. 1 at 182.)  The background reveals a pot to the left of the jar and what looks like another pot and a desk with a picture on it to the right of the jar.  (*See id.*)  Harvard applied for copyright registration of this photograph on February 16, 2016 and the U.S. Copyright Office (Copyright Office) registered the copyright sometime between February 18, 2016 and February 25, 2016.  (*See* Docs. 102 at 2; 106 at 4.)  The Effective Date of Registration, according to the Copyright Office, is February 16, 2016.  (Doc. 109-4 at 9.)

*Historic Hopi Ceramics* was "meant to be a catalog of the Keam [c]ollection[,]" similar to Harvard's online collections.  (Doc. 88 at 50:17–20.)  The authors described the book as a

3

"preliminary survey of historic Hopi ceramics from the Keam collection."  (Pl.'s Supp. Ex. 2 at 2.)  *Historic Hopi Ceramics* includes photographs of "[t]he majority of decorated Hopi vessels" in the Keam collection, excluding only duplicate artifacts, undecorated bowls, and designs too worn to be captured by a photograph.  (*Id.* at 1.)  The authors chose to divide the photographs of the bowls into groups of interior and exterior views "so that the interior and exterior designs could be compared as separate design systems."  (*Id.*)  The images float in space.  (*See id.* at 145–454.)  Someone, the photographer, author, or another collaborator, stripped the background from each photograph and arranged the images in row upon row for examination.  Peabody Museum photographer Hillel Burger provided "photographic expertise" for *Historic Hopi Ceramics*, but Kathleen Borie and Allyson Humphry "photographed the objects."  (*Id.* at xi.) Harvard registered a copyright for *Historic Hopi Ceramics* in 1981, the same year the book was published.  (*Id.*; Doc. 6 at 10–11.)

Mr. Elmore commissioned Mark Diederichsen to make illustrations for his book based on the photographs in *Historic Hopi Ceramics*.  (Docs. 88 at 182:13–14; 109-1; Pl.'s Prelim. Inj. Ex. 22.)  The process was "inelegant."  (Doc. 88 at 61:20 (Mr. Deiderichsen testifying).)  Mr. Elmore arranged photographs from *Historic Hopi Ceramics* into groups and sent them to Mr. Diederichsen.  (*See* Doc. 109-1 (showing lines from separate photographs and tape); Doc. 88 at 187:3–6 (Mr. Diederichsen's testimony on process); *id.* at 153:20–154:10 (Mr. Elmore's testimony, not contesting process).)  Mr. Diedrichsen used the computer program Photoshop to trace over the photographs, fill in the tracings, and erase the photographs.  (Doc. 88 at 153:20– 154:6, 182:21–25.)  By filling in the patterns, Mr. Diederichsen eliminated the photographs' original gray scale.  (*Id.* at 182:21–183:10.)  Mr. Diederichsen colored the images, using tan, black, and red "[t]o identify the design elements" in the pottery.  (*Id.* at 183:23–25, 184:1–5.)

Mr. Diederichsen "didn't add anything creative" to the illustrations, but instead "clean[ed] up the design" and "defin[ed] the details . . . ." (*Id.* at 185:24, 186:10–17.) He also lightened numerous images and removed blemishes in the pots. (*Compare* Pl.'s Supp. Ex. 1 at 139 *with* Pl.'s Supp. Ex. 2 at 239.)

After Mr. Elmore published his book, Harvard filed suit alleging, among other claims, that Mr. Elmore infringed on Harvard's copyright for *Historic Hopi Ceramics*. (Doc. 1 ¶¶ 43– 41; *see also* Doc. 17 ¶¶ 44–51.) Harvard amended its complaint to include Steve Elmore Photography, Inc. on July 28, 2015 (Doc. 7), but Harvard failed to serve Steve Elmore Photography until December 1, 2015 (*see* Doc. 70). In both the original and amended complaints, Harvard only referenced the photograph of the Tusayan jar in a breach of contract claim, not its infringement claim. (Docs. 1 ¶¶ 30, 55; 17 ¶¶ 31, 56.) During oral arguments for the preliminary injunction, however, Harvard asserted a claim for copyright infringement of the Tusayan jar photograph. (Doc. 88 at 193:7–10.) Harvard presented no evidence of copyright registration, and no registration existed at that time. (*See* Doc. 109-4.) Still, Mr. Elmore responded substantively to the infringement claim (Doc. 88 at 202:21–25), and the Court ruled that Mr. Elmore likely did not infringe on the copyright of the Tusayan jar photograph for the purpose of the preliminary injunction (Doc. 75 at 16–17).

The parties have since engaged in significant motions practice. Having lost an earlier Motion to Strike Amended Complaint (*see* Doc. 58), Mr. Elmore moved to dismiss the Amended Complaint for untimely service (Doc. 71). Mr. Elmore also filed a Motion for Partial Summary Judgment, seeking to dismiss claims for infringement of the *Historic Hopi Ceramics* photographs and the photograph of the Tusayan jar. (Doc. 92 at 1, 14.) The day before Harvard's response was due for the Motion for Partial Summary Judgment, Harvard filed a

5

motion to extend the time to respond.  (Doc. 102.)  Harvard sought the delay because Harvard's counsel was out of town on a business trip, scheduled prior to Mr. Elmore's filing, and because Harvard was waiting on the copyright registration for the Tusayan jar photograph.  (*Id.* at 2.) Mr. Elmore refused to consent to the extension; he claimed Harvard used three previous extensions "to attempt to gain a tactical advantage . . . ."  (Doc. 103 at 2.)  Mr. Elmore alleges Harvard now seeks similar unfair advantage by delaying proceedings to register the copyright for the photograph of the Tusayan jar.  (*Id.* at 8–9.)

Harvard filed its response to Mr. Elmore's partial motion for summary judgment on the extended deadline and also filed a cross motion for summary judgment on the infringement claims.  (Doc. 109.)  Then, Harvard moved to amend its complaint to include a claim for copyright infringement of the Tusayan jar photograph and allege registration of the photograph's copyright.  (Doc. 118.)

The Court denies Mr. Elmore's Motion to Dismiss the Amended Complaint because, as described below, service was only six days late and the delay did not prejudice the parties.  *See infra* Section II.  The Court grants Harvard's Motion for Extension of Time to Respond, because Harvard requested the extension before the deadline ran, Harvard had a reasonable explanation for good cause, and the extension did not delay the case.  *See infra* Section III.  The Court denies Harvard's Motion for Leave to Amend Complaint because the amendment would be futile.  *See infra* Section IV.  The Court grants Mr. Elmore's Motion for Partial Summary Judgment for the images based on the *Historic Hopi Ceramics* photographs, because Mr. Elmore's images are not substantially similar to the protected aspects of the *Historic Hopi Ceramics* photographs.  *See infra* Section V.  Consequently, the Court denies Harvard's Cross-Motion for Partial Summary Judgment that Elmore is Liable for Copyright Infringement.  *See id.*

6

## II.     MOTION TO AMEND COMPLAINT

When Harvard filed its complaint, Federal Rule of Civil Procedure 4(m) provided:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (repealed 2015).  The rule establishes two means for a plaintiff to continue after failing to serve the defendant within 120 days.  A plaintiff may show good cause for the failure, requiring the court to extend time for service.  *Id.*  Or, the court may "order that service be made within a specified time."  *Id.*; *see also Espinoza v. United States*, 52 F.3d 838, 840–41 (10th Cir. 1995) ("The plain language of Rule 4(m), however, broadens the district court's discretion by allowing it to extend the time for service even when the plaintiff has not shown good cause.").

Here, the Court uses its discretion to extend the time for service by six days, making Harvard's delayed service timely.  *See Espinoza*, 52 F.3d at 841.  Steve Elmore Photography was not prejudiced by the delay because it had actual notice through its attorney, who also represents Mr. Elmore.  It also had notice through Mr. Elmore, who is, unsurprisingly, the agent and director of Steve Elmore Photography.  (*See* Doc. 72.)  Although Harvard provides no good cause to justify the delay,[1] the Court notes that dismissing the complaint without prejudice would further waste judicial resources.

---

[1] This is the first of two extensions granted to Harvard in this order alone.  *See infra* Section II. Harvard trivializes the requests, stating "delay was minimal" (Doc. 71 at 2) and arguing that requested extensions will not "compromise" case management deadlines (Doc. 102 at 3). Minimal or not, this lack of adherence to the Federal Rules of Civil Procedure wastes Court resources and will not be well taken in the future.

### III.     EXTENTION OF TIME

Federal Rule of Civil Procedure 6(b)(1)(A) allows courts to extend time for pleadings for good cause if a party requests an extension before the original time expires.  *See Hunt v. Green*, No. CIV 03-0585 at 4 (D.N.M. Apr. 15, 2004) (granting motion to extend three deadlines where the motions "go to the heart of [the] case[,]" plaintiff required "time to respond properly and fully" and the extension would not cause unnecessary delay).  In copyright cases, delay in proceedings during copyright registration may assist courts by "allow[ing] the Copyright Office to weigh in with its special expertise regarding copyrightability of [a] plaintiff's work."  Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.16[B][3][b][vi] (Release No. 98) [hereinafter *Nimmer on Copyright*].

Good cause for an extension exists here because the motion goes to the heart of the case and Harvard sought to respond properly and fully by seeking to register its copyright for the photograph of the Tusayan jar before its response was due.  (*See* Doc. 102 at 2.)  Although ultimately unavailing, Harvard reasonably believed that the expertise of the Copyright Office would assist the Court in determining the copyrightability of the photograph.  *See* 2 *Nimmer on Copyright* § 7.16[B][3][b][vi].  Thus, the Court will grant the extension and consider the response.

### IV.     SECOND MOTION TO AMEND COMPLAINT

A party may amend its pleadings once as a matter of course and otherwise "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  The spirit of the Federal Rules of Civil Procedure prefers decisions on the merits over decisions based on technicalities, as long as the claim's underlying facts or circumstances establish a potential cause for relief.  *Foman v. Davis*, 371

U.S. 178, 181 (1962).  A court may, however, deny leave to amend a complaint if amendment would be futile.  *See id.* (including futility, along with other rationales, as an acceptable reason to deny leave to amend a complaint).  Amendment is futile if the pleading "would be subject to dismissal."  *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).  Dismissal includes failure to survive a motion for summary judgment.  *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997).  "The grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."  *Foman*, 371 U.S. at 182; *Jefferson Cty. Sch. Dist. No. R-1*, 175 F.3d at 859 (upholding dismissal for futility as within the district court's discretion).

As discussed below, Harvard's amendment is futile.  *See infra* Section V.  The Court denies the motion to amend the complaint because the claim would not survive a motion for summary judgment.  *See Bauchman for Bauchman*, 132 F.3d at 562.

## V.   PARTIAL SUMMARY JUDGMENT

### A.   *Legal Standard*

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could influence the determination of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disagreement is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To apply this standard, courts "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."  *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 875 (10th Cir. 2009).  The movant bears the initial burden to show that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If shown, the burden shifts to

the non-movant to present evidence showing a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Mere allegations or denials based on the pleadings are insufficient to avoid summary judgment. *Id.*

Courts consider issues of law and fact to resolve copyright disputes. For example, courts consider "whether, as a factual matter, the defendant copied [the] plaintiff's work" and "as a mixed question of law and fact," the extent to which legally protected elements in the plaintiff's work are "substantially similar" to the defendant's work. *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1204 (10th Cir. 2014); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942–43 (10th Cir. 2002). ("[W]hether works are substantially similar is 'a classic jury question[,]' . . . . but the court can monitor the 'outer limits' of similarity if 'reasonable minds could not differ on the question[.]") (quoting 4 *Nimmer on Copyright* § 13.03[A][2] (2001) and *King of the Mountain Sports, Inc. v. Chysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999)); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (affirming summary judgment for a plaintiff because the defendant stressed "the importance of copying the very details of the photograph that embodied plaintiff's original contribution—the poses, the shading, the expressions— . . . throughout the creation of the sculpture").

### B.    *Discussion of the Copyright Infringement Claim*

Copyright infringement involves more than just copying. To sue for statutory copyright infringement, a plaintiff must first register its copyright. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Next, plaintiffs must establish two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991). The second element relies on its own sub-elements: (a) whether the defendant factually copied the plaintiff's work; and (b)

whether the elements that the defendant copied are protected by copyright. *Paycom Payroll*, 758 F.3d at 1204; *see also Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

       *i.*     *Factual Copying*

This case presents one of those rare circumstances where factual copying of both the *Historic Hopi Ceramics* photographs and the Tusayan jar photographs appears clear. Both Mr. Elmore and Mr. Diederichsen admitted to actions sufficient to show factual copying of the *Historic Hopi Ceramics* photographs. (*See* Doc. 88 at 153:20–154:6, 182:21–25.) The obvious similarity between Harvard's Tusayan jar photograph and the photograph in Mr. Elmore's book indicates that Mr. Elmore also copied the photograph of the Tusayan jar image. (*Compare* Pl.'s Supp. Ex. 1 *with* Doc. 109-5.) Mr. Elmore's failure to produce the postcard cements the issue. No reasonable juror would doubt that factual copying occurred here, and thus the remaining analysis focuses on the other factors.

      *ii.*    *Registration of Copyright*

      a.  Tusayan Jar

17 U.S.C. 411(a) states, "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made . . . ."[2] Thus, although "a copyright exists the moment an original idea leaves the mind and finds expression in a tangible medium," a plaintiff cannot sue on that right until the plaintiff registers the copyright. *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1198–99 (10th Cir. 2005), *abrogated on other grounds by Reed Elsevier*, 559 U.S. at 154. If only it were

---

[2] Additionally, a plaintiff cannot obtain statutory damages or attorney's fees unless the plaintiff registered his copyright before infringement occurred. 17 U.S.C. § 412; 2 *Nimmer on Copyright* § 7.16[C][1][a].

that simple.   Courts disagree on the meanings of the two goal posts in the statute: when registration occurs and when a suit is instituted.   Frustratingly, these divergent interpretations result in complex decisions with little practical consequence.   If a court dismisses a claim for failure to register the copyright prior to instituting suit, the plaintiff need only register the copyright and re-institute suit.   *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990) (noting that "[e]xcept for the technical distinction between filing a new complaint and filing an amended complaint, the case would have been properly filed" and moving on to consider the merits of the case); *K-Beech, Inc. v. Doe*, No. 11-CV-02371-CMA-CBS, 2012 WL 592868, at *2 n.4 (D. Colo. Feb. 23, 2012); 2 *Nimmer on Copyright* § 7.16[B][3][b][iii].   Regardless, resolution requires a brief discussion of the issues, which inform the path forward suggested by the preeminent Tenth Circuit case, *La Resolana Architects*.

A well-acknowledged circuit split exists over whether registration occurs upon application to register a copyright or only after the Copyright Office decides to register the copyright.   *La Resolana Architects*, 416 F.3d at 1201–02.   When the Copyright Office registers a copyright, it provides an "effective date" of copyright registration, which is retroactive to the date the Copyright Office received the application.   17 U.S.C. § 410(d); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 618 (9th Cir. 2010).   Circuit courts that follow the application approach have determined that registration is also retroactive and accrues according to the effective date designated by the Copyright Office.   *See Cosmetic Ideas*, 606 F.3d at 618; *La Resolana Architects*, 416 F.3d at 1203.   The Tenth Circuit, on the other hand, applies the registration approach, and has determined that registration cannot occur until the Copyright Office actually issues its decision, regardless of the effective date of registration.   *La Resolana Architects*, 416 F.3d at 1202–03.   In so deciding, the Tenth Circuit joined the Eleventh Circuit

12

and the Southern District Court of New York, and eschewed the admittedly "practical" reasoning of the Fifth Circuit and the reputable treatise on copyright law, *Nimmer on Copyright*. *Id.*

Even so, the *La Resolana Architects* court left the door open to circumvent the technical requirements by acknowledging that plaintiffs may be able to amend their complaints after registering their copyrights. *See La Resolana Architects*, 416 F.3d at 1208 n.14. Although the court "express[ed] no opinion" as to whether amendment would satisfy the statutory requirement, in a footnote the court cited two cases, one in the registration camp and one in the application camp, which "found that a litigant can cure a jurisdictionally defective complaint by amending it." *Id.* (citing *M.G.B. Homes*, 903 F.2d at 1488–89 (11th Cir. 1990) and *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 366 (5th Cir. 2004)). 2 *Nimmer on Copyright* supports this "intermediate approach[,]" noting that "[a]s an absolute limit, if the Copyright Office has failed to receive the necessary elements to issue a registration certificate prior to the time that the court is called upon to issue final judgment, the action must be dismissed." 2 *Nimmer on Copyright* § 7.16[B] [3][c].

Since then, *Reed Elsevier* strengthened the case for a practical sidestep around the statute's technical requirements. *Reed Elsevier*, 559 U.S. at 171. In *Reed Elsevier*, the Court held that, although registration is a "precondition to filing a claim[,]" it is not a jurisdictional precondition. *Id.* at 166. Whereas a jurisdictional requirement must exist "at all stages of review," *Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009), statutory requirements can be cured through amendment where facts develop after the plaintiff initiates suit, *see Childers v. Indep. Sch. Dist. No. 1 of Bryan Cty., State of Okla.*, 676 F.2d 1338, 1343 (10th Cir. 1982). Thus, amending a complaint cures the statutory requirement by effectively re-instituting the claim.

Harvard played a very close game with this claim.  It first failed to make a claim regarding infringement of the Tusayan jar photograph.  (*See* Doc. 1.)  Even after discovering the claim and alleging it in court, Harvard failed to immediately pursue copyright registration for the Tusayan jar photograph.  (*See* Docs. 88; 118.)  Still, for at least two reasons, Harvard's infringement claim involving the Tusayan jar meets the valid copyright registration requirement.  First, Harvard did not institute action for infringement of the Tusayan jar before the copyright was registered.  Harvard only instituted that claim when it moved to amend its complaint, after the Copyright Office made its decision to register the copyright.  (*See* Doc. 118 at 29.)  Second, by amending its complaint, Harvard re-instituted the entire suit, curing any statutory deficiencies that otherwise would have existed before Harvard registered its copyright for the Tusayan jar photograph.  Thus, Harvard registered its copyright for the Tusayan jar photograph before instituting its claim.[3]

   b.  *Historic Hopi Ceramics* Photographs

Unlike the copyright for the photograph of the Tusayan jar, the copyright for the *Historic Hopi Ceramics* photographs was registered before Harvard initiated suit.  (Doc. 6 at 10.)  Thus, Harvard easily meets this element for infringement of these photographs.

_____

[3] The Court need not determine whether the claim would survive without the amended complaint, but it seems unlikely.  The court in *K-Beech* relied heavily on a Ninth Circuit case, which follows the application approach, and the copyright's effective date of registration.  *See K-Beech*, 2012 WL 592868, at *2; *c.f. A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*, No. CIV-10-422-C, 2011 WL 6888543 (W.D. Okla. Dec. 29, 2011) (applying only the registration approach and arriving at the opposite conclusion).  Additionally, the facts in *K-Beech* are not entirely on point.  In *K-Beech*, the retroactive date occurred before the plaintiff instituted suit, *see K-Beech*, 2012 WL 592868, at *2, whereas the retroactive date in this case occurred well after Harvard initially instituted suit.  Thus, while the *K-Beech* plaintiff effectively registered its copyright before instituting suit, Harvard would have had to amend its complaint to re-institute suit after it registered its copyright.  (*See* Docs. 1; 118 at 29).

iii.     *Ownership of a Valid Copyright*

Copyrights only protect "original works of authorship[,]" 17 U.S.C. § 102, and to be original, a work must be "independently created by the author (as opposed to copied from other works), and . . . possess[] at least some minimal degree of creativity," *Feist Publ'ns*, 499 U.S. at 345. "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (quoting 1 *Nimmer on Copyright* § 1.08 [C][1]). "[P]hotographs are copyrightable, if only to the extent of their original depiction of the subject." *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1264 (10th Cir. 2008). Whereas the image in a photograph cannot be copyrighted, "the photographer's decisions regarding pose, positioning, background, lighting, shading, and the like . . . can be said to 'owe their origins' to the photographer, making the photograph copyrightable, at least to that extent." *Id.* Conversely, illustrations "*intended* to be as accurate as possible in reproducing the [image] on which they were based" constitute only "a form of slavish copying that is the antithesis of originality." *Id.* at 1269 (quoting *ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir. 2005)).

If a plaintiff registers a copyright within five years of publication, that registration "constitute[s] prima facie evidence of the validity of the copyright . . . ." Conversely, if a plaintiff registers a copyright after five years of publication, the registration only carries evidentiary weight "at the discretion of the court." 17 U.S.C. § 410(c).

a.  Copyright of Tusayan Jar Photograph

To determine whether a work qualifies for registration, the Copyright Office follows its administrative manual, the *Compendium of U.S. Copyright Practices, Third Edition*. U.S. Copyright Office, *Compendium of U.S. Copyright Practices* 1 (3d ed. 2014). The *Compendium*

notes that "[a]s with all copyrighted works, a photograph must have a sufficient amount of creative expression to be eligible for registration." *Id.* § 909.1.  The *Compendium* specifies that "creativity in a photograph may include the photographer's artistic choices in creating the image, such as the selection of the subject matter, the lighting, any positioning of subjects, the selection of camera lens, the placement of the camera, the angle of the image, and the timing of the picture." *Id.*  On the other hand, the *Compendium* instructs the Copyright Office not to register works "if it is clear that the photographer merely used the camera to copy the source work without adding any creative expression to the photo." *Id.* § 909.3.

Two examples help illustrate the difference.  In the first example, the Copyright office receives applications for ten photographs from a local photography club.  U.S. Copyright Office, *Compendium of U.S. Copyright Practices* § 909.3.  All of the photographs were taken on the same afternoon and depict the Washington Monument.  *Id.*  "Although some of the photographs are remarkably similar in perspective, the registration specialist will register all of the claims because each photographer selected the angle and positioning of his or her photograph, among other creative choices." *Id.*

Alternatively, the section on geometric shapes provides an example of a work consisting entirely of uncopyrightable elements without sufficient creative expression.  U.S. Copyright Office, *Compendium of U.S. Copyright Practices* at 906.1.  Here, "Gloria Grimwald paints a picture with a purple background and evenly spaced white circles:"



*Id.*   This picture would be denied.   *Id.*   Even though Ms. Grimwald combined the purple rectangle and the white circles and arranged the circles in a standard symmetrical way, the picture "does not contain a sufficient amount of creative expression to warrant registration."   *Id.* Alternatively, the below wrapping paper would qualify for copyright registration:



This work qualifies because the combination of different sizes of geometric shapes and colors "culminat[e] in a creative design that goes beyond the mere display of a few geometric shapes in a preordained or obvious arrangement."   *Id.*

Notably, in both situations, the *Compendium* emphasizes creative choices.   In the first example, members of the photography club take the pictures and have many options of angles, scope, and a constantly moving background to choose from.   In the second example, "symmetrical" and "preordained or obvious" arrangements do not qualify, whereas combinations that require creative decision-making do.

Case law supports reliance on external evidence to evaluate whether a creative spark exists for copyright protection.   In *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 516 (7th Cir. 2009), the court considered whether exact copies of a marketing photograph infringed on a copyright where the photographer depicted toys in a scene.   The court found sufficient expression in the photograph for "limited" protection based in part on the photographer's testimony.   *Id.* at 520.   In capturing the scene, the photographer:

> used various camera and lighting techniques to make the toys look more "life like," "personable," and "friendly."   [The photographer] explained how he tried to

> give the toys "a little bit of dimension" and that it was his goal to make the toys "a
> little bit better than what they look like when you actually see them on the shelf."

*Id.* at 519 (quoting the photographer's testimony).  Similarly, the court in *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 301 (S.D.N.Y. 2000), considered photographs of picture and mirror frames taken for a merchant who sold the frames.  The photographer made careful decisions regarding the camera, lens and film, and lighting "to fill out the shadows (but not eliminate them) to give a chiaroscuro effect that would wrap around the [frame] and give it depth."  *Id.* at 304, 311 (quoting the photographer's affidavit).  The court contrasted these photographs with other photographs where "[t]he gilded frames [were] dull and the details [were] obscured by shadows or overexposed."  *Id.* at 311.  Given the limited, but present, expression, these photographs were protected from "verbatim copying."  *Id.*

The photograph of the Tusayan jar lacks a creative spark because it depicts the artifact in an obvious, preordained angle and depth of field to best record the artifact's condition.  Any two dimensional depiction of a three dimensional object necessarily captures only one angle and depth of field.  Yet the logical result cannot be that any two dimensional depiction of a three dimensional object qualifies for copyright registration.  The court in *Schrock* determined that photograph was protected by copyright not because the photograph depicted various angles and positions of three-dimensional toys, but rather because the photographer attempted to imbue life into the objects by using photographic techniques.  *See Schrock*, 586 F.3d at 516.  Similarly, the Washington monument example relies in part on the fact that the photographers are in a photography club to register works with "remarkably similar perspectives . . . ."  U.S. Copyright Office, *Compendium of U.S. Copyright Practices* § 909.3.  In Harvard's case, the photograph was not part of a study of photography, but rather a "conservation image," taken "as part of a condition assessment."  (Doc. 88 at 47:1–2, 47:23–25.)  The angle and positioning of the artifact

best show the condition of the Tusayan jar.  By showing the entire rim in that position, the photograph captures both chips in the artifact's rim.  (*See* Pl.'s Supp. Ex. 1 at 182.)  These choices were utilitarian, not creative, made to best copy the three dimensional artifact.

The presence of the background images reinforces this conclusion.  Instead of crafting a background to best portray the object, the photographer merely took the photograph where the artifact rested, without any apparent rationale for including the objects in the background.  (*See* Pl.'s Prelim. Inj. Ex. 5.)  This happenstance is much more like the default, over-exposed photographs in *SHL Imaging* than the chiaroscuro photographs that received copyright protection.  *SHL Imaging*, 117 F. Supp. 2d at 301.  Thus, any reasonable juror would determine that the photographer merely used the camera to "copy the source work without adding any creative expression to the photo."  U.S. Copyright Office, *Compendium of U.S. Copyright Practices* at § 909.3.

Moreover, Harvard presents no evidence that the photographer intended to achieve any purpose other than to record the condition of the artifact depicted.[4]  Harvard acknowledges it cannot produce such evidence because the supposed photographer, Mr. Burger, is deceased.  (Doc. 119 at 2.)  Harvard argues that "[s]urely, the death of a photographer does not change the law or substantive rights of the parties."  (*Id.*)  While true, courts require evidence of "a minimal

---

[4] Harvard seeks to introduce an excerpt of a book that quotes Mr. Burger, who allegedly took the photograph of the Tusayan jar and provided "photographic expertise" for *Historic Hopi Ceramics*.  (Doc. 109-6.)  For his part, Mr. Elmore seeks to introduce an article by one of the authors of *Historic Hopi Ceramics*, Lea S. McChesney.  (Doc. 92 ¶ 19.)  Both statements are inadmissible hearsay.  *See* Fed. R. Evid. 801(c), 802.  Harvard asserts that Mr. Burger's statements are admissible under Federal Rule of Evidence 804(b)(6).  (*See* Doc. 119 at 9.)  Harvard's citation to Rule 804(b)6) was likely in error, because this rule only allows statements "offered against a party that wrongfully caused . . . the declarant's unavailability as a witness, and did so intending that result."  Likely, Harvard sought to invoke the residual exception, Federal Rule of Civil Procedure 807(a), instead.  This rule does not apply either, because Harvard provides no examples of "equivalent circumstantial guarantees of trustworthiness . . . ."

degree of creativity" to determine that a work is protected by copyright. *Feist Publ'ns*, 499 U.S. at 345. Absent evidence in the work itself, extrinsic evidence can help identify creative decisions. *See Schrock*, 586 F.3d at 516; *SHL Imaging*, 117 F. Supp. 2d at 301; *compare Compendium of U.S. Copyright Practices* at § 906.1 (depicting a creative arrangement of un-copyrightable elements) *with id.* § 909.3 (relying, in part, on evidence that the pictures were taken by members of a photography club). The requirement for creativity, however it is shown, defines the substantive rights of the parties. *See Feist Publ'ns*, 499 U.S. at 345. Harvard can provide no evidence of intentional decision-making, and thus Harvard does not own a valid copyright of the Tusayan jar photograph. The Court grants Mr. Elmore's claim for summary judgment on the infringement claim for the Tusayan jar.

  b.  Copyright of *Historic Hopi Ceramics* Photographs

Although "[a] Certificate of Registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright," *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993), a defendant can refute this evidence by showing "the works in question were not entitled to copyright protection[,]" *Meshwerks*, 528 F.3d at 1262.

The copyright for *Historic Hopi Ceramics* was registered in 1981, thus establishing prima facie evidence of a valid copyright. (Pl.'s Supp. Ex. 2; Doc. 6 at 10–11.) *See Gates Rubber Co.*, 9 F.3d at 831. Mr. Elmore's argument that the photographs in *Historic Hopi Ceramics* are entirely unprotected by that copyright is persuasive, but ultimately unavailing. Admittedly, it's a stretch to say that the photographs in *Historic Hopi Ceramics* contain significant creativity. The angle and positioning is unimaginative, as are the repetitive shots of each artifact. The description of the overall work as a "catalog" and a "preliminary survey" reinforces the sense that the photographer intended these photographs to reproduce the images as accurately as possible. (Doc. 88 at 50:17–20; Pl.'s Supp. Ex. 2 at 2.)

Even so, the decision to capture each artifact in the same manner, while evidence of very little creativity, demonstrates a spark beyond slavish copying. Resolving all inferences in a light most favorable to Harvard, the photographers also chose the position of the artifacts to depict, which for the pots required selecting one out of a circumference of options. Each artifact had to be posed in the exact same way, and each background stripped, to emphasize the impact of the collection as a whole rather than the intricacies of each individual piece. The authors' decision to show first the interiors of all pots and then the exteriors to portray "separate design systems" emphasizes this creative decision. Tellingly, Mr. Elmore made his own decisions in grouping the photographs, sometimes electing not to follow the same approach. (*See* Pl.'s Prelim. Inj. Ex. 22 at 3, 5, 13.) Lastly, some "photographic expertise" contributed to the photographs' creation. (Pl.'s Supp. Ex. 2 at xi.) While expertise on its own is insufficient to show creativity, *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 447 (S.D.N.Y. 2005), the expertise combined with the selection of positions and decision to portray the artifacts in a manner that emphasized the collection as a whole indicates a "minimal degree of creativity"—if only a humble spark.

iv. *Protected Elements of* Historic Hopi Ceramics

Even if a work is copyrighted, the copyright may not protect "every element of the work." *Feist Publ'ns*, 499 U.S. at 348. A defendant copies enough of a plaintiff's expression to infringe on a copyright when "substantial similarity" exists between the defendant's work and the protectable elements in the plaintiff's work. *Country Kids 'N City Slicks*, 77 F.3d at 1284. As discussed earlier, works that lack even a spark of originality exist at one end of the spectrum and receive no copyright protection at all. *See Meshwerks*, 528 F.3d at 1269. Similarly, if a work depicts a subject susceptible to "only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is thin

and a work must be 'virtually identical' to infringe." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (quoting *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003)); *see also Feist Publ'ns*, 499 U.S. at 349 (factual compilations); *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1180-81 (D. Colo. 2008) (depiction of documented behavior in wildlife).  The less original the plaintiff's work, the more the defendant must copy to infringe on the plaintiff's copyright.  4 *Nimmer on Copyright* § 13.03[A][4].[5]

Here, the copyright for *Historic Hopi Ceramics* does not protect against copying the most prominent features in the works: the intricate pottery designs and forms achieved by a Hopi potter, perhaps Nampeyo.  (*See* Docs. 92 ¶ 15; 109 ¶ 15.)  Instead, the issue is whether Mr. Elmore's images are substantially similar to the protected but less obvious aspects of the *Historic Hopi Ceramics.  See Country Kids 'N City Slicks*, 77 F.3d at 1284; *Meshwerks*, 528 F.3d at 1269.  Given the minimal creativity in the compilation and arrangement of the artifacts, the protected content of the *Historic Hopi Ceramics* photographs is incredibly limited.  Thus, the copyright protects only against copies that achieve the same emphasis on the condition of the collection as a whole, basically verbatim copies.  *See supra* Section V(iii)(b); *SHL Imaging*, 117 F. Supp. 2d at 311.

---

[5] Harvard argues that direct copying of any work results in copyright infringement.  (Doc. 119 at 6 ("Others are free to copy the original.  They are not free to copy the copy.") (quoting *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249 (1903)).)  *Bleistein* addresses a distinct context: exact copies of illustrated advertisements.  *Id.* at 248.  The Court in *Bleistein* notes the extent of the original creation, including the ensemble of subjects, details in the scenes, color choices, and freehand drawing.  *Id.* at 250.  That copyright protected all of these creative decisions, and an exact copy would violate that protection.  The situation may be different where the copyright protects less of the work and the copying is less exact.

The *Historic Hopi Ceramics* images in Mr. Elmore's book are not verbatim copies and do not achieve the same effect.  First, Mr. Elmore regrouped many of the photographs, altering the comparison of designs.  (*See.* Docs. 109-1; 88 at 187:3–6.)  Mr. Diederichsen then removed the lighting from the images by changing them from grayscale to line art.  (Doc. 88 at 182:21–183:10.)  He added color to highlight design elements.  (*Id.* at 183:22–184:4.)  He even decreased the effect of the photographers' selection of the pots' positions by eliminating fire clouds, cleaning up designs, and defining details.  (*Id.* at 185:24, 186:10–17; *compare* Pl.'s Supp. Ex. 1 at 139 *with* Pl.'s Supp. Ex. 2 at 239.)  Although the absence of a background remains, the overall effect shifts the emphasis from the collection of artifacts in their current condition (*see* Doc. 88 at 47:1–2, 47:23–25; Pl.'s Supp. Ex. 2 at xi), to the design elements as originally depicted on the artifacts (*see* Doc. 88 at 185:24, 186:10–17; Pl.'s Supp. Ex. 1 at 139).  Considering only the protected elements in the *Historic Hopi Ceramic* photographs and Mr. Elmore's images, reasonable minds could not find substantial similarity between the two.  *See Country Kids 'N City Slicks*, 77 F.3d at 1284.  Consequently, the images based on the *Historic Hopi Ceramic* photographs do not infringe on Harvard's copyright, and summary judgment for Mr. Elmore is appropriate.

## VI.    CONCLUSION

Despite barriers presented by both parties, the Court attempted to avoid ruling based on technicalities and instead rule based on the law governing Harvard's claims.  *See Foman*, 371 U.S. 182.  The Court consequently denies the Motion to Dismiss the Amended Complaint because the parties were not prejudiced by the six-day delay.  The Court grants Harvard's motion to extend time because Harvard demonstrated good cause for the delay.  But, the Court denies Harvard's Motion for Leave to Amend Complaint because amendment would have been futile:

the photograph lacks sufficient originality to receive copyright protection. The Court grants Mr. Elmore's motion for summary judgment on the claim for the *Historic Hopi Ceramics* photographs because the copyright protection for the photographs is thin and the copied elements in Mr. Elmore's images are not substantially similar to expressive components of the *Historic Hopi Ceramics* photographs.

**THEREFORE**,

**IT IS ORDERED** that Mr. Elmore's Motion to Dismiss Amended Complaint (Doc. 71) is **DENIED**; Harvard's Motion for Extension of Time to Respond to Defendant Elmore's Motion for Partial Summary Judgment (Doc. 102) is **GRANTED**; Harvard's Motion for Leave to Amend Complaint (Doc. 118) is **DENIED**; Mr. Elmore's Motion for Partial Summary Judgment (Doc. 92) is **GRANTED**; and Harvard's Cross-Motion for Partial Summary Judgment that Elmore is Liable for Copyright Infringement (Doc. 109) is **DENIED**.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**